UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
JIBRAN KHAN,

                Plaintiff,

   -against-

NYRENE, INC. d/b/a SUBWAY RESTAURANT
and SHAWN CHOWDHURY,

                Defendants.
---------------------------------------------------------------X

**REPORT AND RECOMMENDATION**

18-CV-557 (ARR) (ST)

**TISCIONE, United States Magistrate Judge:**

       Plaintiff Jibran Khan brings this case under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the New York Labor Law ("NYLL"), N.Y. Lab. Law § 190 *et seq.* against Nyrene, Inc. ("Nyrene"), doing business as Subway Restaurant, and Shawn Chowdhury. *See* Compl., ECF No. 1.  Defendant Nyrene operates a Subway restaurant at which Mr. Khan was formerly employed and Defendant Shawn Chowdhury is the individual owner of Nyrene. *See* Compl. ¶¶ 8–10.  Mr. Khan alleges that Defendants did not pay him overtime wages, the minimum wage, or spread of hours wages, and that Defendants did not provide him required wage notices and statements.  Compl. ¶¶ 38–54.  After Defendants failed to appear or otherwise defend this action, the Clerk of Court entered default.  *See* Clerk's Entry of Default, ECF No. 28.  The Honorable Allyne R. Ross referred Mr. Khan's Motion for Default Judgment to me for a Report and Recommendation.  *See* Order Referring Mot. Default J., Aug. 16, 2019.  I recommend that Mr. Khan's Motion be GRANTED and damages be awarded in the amount described herein.

    **I.**      **FACTUAL BACKGROUND**

       The following information was obtained from Mr. Khan's Complaint, which is deemed admitted by virtue of default.  Mr. Khan was employed by Defendants as a cashier at a Subway restaurant located in Long Island City, Queens, New York.  Compl. ¶ 11.  Mr. Khan was hired

1

on June 11, 2017 and was employed until November 12, 2017. Compl. ¶ 15. Mr. Khan performed a variety of different tasks in the course of his employment, but those tasks mainly consisted of processing payments as a cashier. Compl. ¶ 16. Mr. Khan regularly worked 45 to 56 hours over the course of his 5- or 6-day workweek. Compl. ¶ 17. Mr. Khan was paid a regular rate of $9 an hour for all hours worked including the hours worked in excess of 40 hours in a workweek. Compl. ¶ 18. Mr. Khan regularly worked a spread of hours in excess of 10 hours in a given day for an average of 2 days per workweek during the course of his employment for the Defendants. Compl. ¶ 19.

Mr. Khan asserts that he was not paid the relevant overtime rate for hours worked in excess of 40 in a week, nor was he paid the New York State minimum wage rate. Compl. ¶¶ 20–21. Mr. Khan also asserts that he was not provided with the notice(s) required by NYLL 195(1), nor was he provided with the statements required by NYLL 195(3). Compl. ¶¶ 23–24.

Mr. Khan filed his complaint on January 26, 2018. *See* Compl. He properly served Nyrene with the Summons and Complaint on January 29, 2018. *See* Summons Returned Executed by Jibran Khan, ECF No. 5. After both Nyrene and Mr. Chowdhury timely filed their Answer via counsel, see Answer to Compl., ECF No. 12, Mr. Khan filed proof that Mr. Chowdhury had been served with the Summons and Complaint on January 31, 2019. *See* Summons Returned Executed by Jibran Khan, ECF No. 16.

On April 3, 2018, the Court held an initial conference, at which counsel for both parties appeared. *See* Min. Entry, ECF No. 15. At the conference, the Court set a discovery schedule, ordering all fact discovery to be completed by October 20, 2018. *Id.* On June 18, 2018, the Court held a settlement conference, at which all parties and their counsel appeared. Min. Entry for Settlement Conference, ECF No. 19.

On November 16, 2018, Defendants' counsel filed a letter indicating his intent to file a motion to withdraw as attorney because Mr. Chowdhury had been consistently uncommunicative. Mot. Withdraw at 1, ECF No. 21. On the same day, the Court issued an order requiring Defendants' counsel to file the motion by November 23, 2019, and requiring all

counsel and Mr. Chowdhury to appear for a status conference on November 30, 2018.  *See* Scheduling Order, Nov. 16, 2018.

Defendants' counsel timely filed the Motion to Withdraw as Attorney.  *See* Mot. Withdraw, ECF No. 21.  Counsel maintained that he had repeatedly attempted to contact Mr. Chowdhury through telephone, e-mail, and text messages in an attempt to obtain the information necessary to respond to Mr. Khan's discovery requests.  *See* Affirmation Supp. Mot. Withdraw ¶ 17, ECF No. 21-1.   Mr. Chowdhury occasionally responded to counsel's messages but failed to provide counsel with enough information to continue representation.  *See id.* ¶¶ 18–26.  Counsel represents that Mr. Chowdhury is a "good friend" of his but, despite their personal relationship, he could not "continue to represent him in this matter."  *Id.* ¶ 25.

Defendants did not appear at the status conference on November 30, 2018.  *See* Min. Entry Status Conference, ECF No. 22.  As a result, the Court scheduled a show cause hearing for January 11, 2019 and ordered Defendants to "Show Cause why a default judgment should not be issued for failure to defend."  *Id.*  Defendants failed to appear at the January 11 show cause hearing.  *See* Min. Order Show Cause Hearing, ECF No. 23.  The Court granted counsel's Motion to Withdraw and ordered Defendants to obtain new counsel and file a letter by February 1, 2019.  *Id.*  Defendants did not file a letter nor has new counsel entered appearance in the case.  On May 29, 2019, this Court recommended "striking Defendants' Answer, directing the Clerk of Court to issue certificates of default against Defendants, and permitting Plaintiff to move for default judgment within 45 days of the issuance of certificates of default."  Sua Sponte R. & R. at 7, ECF No. 26.  On June 18, 2019, the Honorable Allyne R. Ross adopted this Court's Report and Recommendation.  *See* Order Adopting R. & R., June 18, 2019.  On June 24, 2019, the Clerk entered default, and, after granting an extension of time, Mr. Khan filed a Motion for Default Judgment on August 15, 2019.  *See* Mot. Default J., ECF No. 30.  This Court now issues a Report and Recommendation pursuant to Judge Ross' referral under 28 U.S.C. § 636(b)(1)(B).

**II.      APPLICABLE LAW**

A defending party who fails to adequately respond to a complaint risks default.  Courts

3

are directed to engage in a two-step process for the entry of a judgment against a party who fails to defend: first, the Clerk of Court enters default, and second, a judgment is entered on the default. *See City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011). Rule 55(a) of the Federal Rule of Civil Procedure sets forth the first step as follows:

> When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default.

Fed. R. Civ. P. 55(a). While a "typical" default is entered "because a defendant failed to file a timely answer[,] . . . a district court is also empowered to enter a default against a defendant that has failed to 'otherwise defend.'" *Mickalis Pawn Shop*, 645 F.3d at 129 (citing Fed. R. Civ. P. 55(a)) (other citation and bracket omitted).

The second step is the entry of default judgment. In this step, the court "converts the defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to which the court decides it is entitled . . . ." *Id.* at 128. Following the clerk's entry of default, a court considers as true all factual allegations in the complaint relating to liability. *See Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012). But the court still must determine whether the factual allegations, taken as true, establish the defendant's liability as a matter of law. *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) (following entry of default, the court is "required to determine whether the [plaintiff's] allegations establish [defendant's] liability as a matter of law"). "[B]ecause defaults are generally disfavored and are reserved for rare occasions, when doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993).

By entry of default, the defaulting party does not concede liability, as stated above, nor does the defaulting party admit the plaintiff's factual allegations with respect to the amount of damages. *See Cement & Concrete Workers Dist. Council Welfare Fund*, 699 F.3d at 234. After finding liability, a court must conduct an inquiry to "ascertain the amount of damages with

4

reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999) (citation omitted); *see United States v. Myers*, 236 F. Supp. 3d 702, 709 (E.D.N.Y. 2017) ("While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation.") (quoting *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974)). "A court may make this determination based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence." *J & J Sports Prods. v. Emily Bar Rest. Inc.*, No. 15-CV-6499 (RJD), 2016 WL 6495366, at *2 (Sept. 27, 2016) (citing Fed. R. Civ. P. 55(b)(2) & *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 508 (2d Cir. 1991)), *adopted by*, 2016 WL 6495526 (E.D.N.Y. Nov. 2, 2016).

### III.  ANALYSIS

#### A.  FLSA Applies to Plaintiff's Claims

The FLSA governs minimum wages, maximum hours, and other policies and practices affecting employees and employers. *See Sandifer v. U.S. Steel Corp.*, 571 U.S. 220, 224 (2014). To demonstrate entitlement to the FLSA's wage and overtime protections, a plaintiff must show: (1) that the defendant employed plaintiff; and (2) that the employment fell under the FLSA's individual or enterprise coverage provisions. *See Jacobs v. New York Foundling Hosp.*, 577 F.3d 93, 96–97 (2d Cir. 2009) (citing *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 295 n.8 (1985)); *see also* 29 U.S.C. § 206(a)(1) (providing for minimum wage for qualifying employees); 29 U.S.C. § 207(a)(1) (providing for overtime protection for qualifying employees).

To determine whether the defendant employed the plaintiff, there is "no rigid rule for the identification of an FLSA employer." *Teri v. Spinelli*, 980 F. Supp. 2d 366, 374–75 (E.D.N.Y. 2013) (citing *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 143 (2d Cir. 2008)). Rather, the touchstone in determining whether an individual is an employer is "operational control" over employees, meaning whether the individual exercises control over and makes decisions that "directly affect the nature or conditions of the employees' employment." *Irizarry v. Catsimatidis*, 722 F.3d 99, 110 (2d Cir. 2013).

Nevertheless, the Circuit has provided a "'nonexclusive and overlapping set of factors' to ensure that the economic realities test mandated by the Supreme Court is sufficiently comprehensive and flexible to give proper effect to the broad language of the FLSA." *Teri*, 980 F. Supp. 2d at 374–75 (citing *Barfield*, 537 F.3d at 143). Specifically, under the formal control test, the following factors are relevant to determine whether an individual-defendant employed the plaintiff: whether the defendant "(1) had the power to hire and fire employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records." *Irizarry*, 722 F.3d at 104–05 (2d Cir. 2013) (quoting *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984)). Despite these enumerated factors, however, a district court should consider any factor relevant to its assessment of the economic realities of an employer-employee relationship. *See Ling Nan Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 71–72 (2d Cir. 2003).

To fall under the FLSA's individual coverage provision, the employee's work must directly involve or relate to "the movement of persons or things . . . among the several States or between any State and any place outside thereof." *Ethelberth v. Choice Sec. Co.*, 91 F. Supp. 3d 339, 354 (E.D.N.Y. 2015) (quoting 29 C.F.R. § 779.103) (emphasis omitted). To fall under enterprise coverage, the enterprise must have receipts greater than $500,000 and at least some employees must "handle, sell, or otherwise work on goods or materials that have been moved in or produced for" interstate commerce. *Id.* at 355 (quoting *Jones v. E. Brooklyn Security Services Corp.*, 11-CV-1021 (JG) (SMG), 2012 WL 3235784, at *4 (E.D.N.Y. Aug. 7, 2012)).

Mr. Khan's allegations are sufficient to show that he is entitled to FLSA's protections. First, he attests that Mr. Chowdhury "interviewed and then hired me on behalf of Defendants." Decl. Pl. Jibral Khan ("Khan Decl.") ¶ 6, ECF No. 30-2. Further, Mr. Chowdhury set Mr. Khan's "work duties, [his] work schedule, and rate of pay on behalf of Defendants." Khan Decl. ¶ 7. Mr. Chowdhury supervised him during the workday, set his work schedule, recorded his hours, and paid his wages. Khan Decl. ¶¶ 8–9. Mr. Chowdhury also paid Mr. Khan his wages each pay period "in the form of cash without any pay stubs." Khan Decl. ¶ 10. Mr. Khan's

6

allegations meet all four of the factors of the "formal control test" that is used to determine whether an individual defendant employed the plaintiff. This Court finds that Mr. Chowdhury acted as Mr. Khan's employer under the definition of the FLSA.

Second, Plaintiff Khan's allegations are also sufficient to conclude that Defendant Chowdhury employed Plaintiff Khan jointly with Nyrene. In the Complaint, Plaintiff alleged, "the corporate Defendant was owned/controlled/managed by Defendant Shawn Chowdhury ("Chowdhury") who was in charge of the operations and management of Nyrene." Compl. ¶ 9; *see also* Answer ¶ 9 (admitting allegations in paragraph 9 of Plaintiff's Complaint), ECF No. 9. Plaintiff also alleged, "Defendants individually and/or jointly, controlled the employment of Plaintiff and was responsible for hiring, firing, scheduling, controlling, managing, supervising, and record-keeping as to Plaintiff's employment, among other employment functions." Compl. ¶ 10; *see also* Answer ¶ 10 (admitting allegations in paragraph 10 of Plaintiff's Complaint). Plaintiff alleged, "[a]t all times relevant herein, Plaintiff was employed individually and/or jointly by Defendants." Compl. ¶ 12; Answer ¶ 12 (admitting allegations in paragraph 12 of Plaintiff's Complaint). A plaintiff's allegations that an individual and corporate defendant are part of a common ownership or management of a business are sufficient to allege joint employment following a default. *See Pineda v. Masonry Contr., Inc.*, 831 F. Supp. 2d 666, 685–86 (S.D.N.Y. 2011). Based on Plaintiff's allegations, this Court finds that Mr. Kahn was jointly employed by Nyrene.

Third, Plaintiff's allegation that "Defendants had revenues and/or transacted business in an amount exceeding $500,000 annually" is sufficient to meet the pleading requirement for an FLSA claim on a default judgment motion. Compl. ¶ 26; *see Cardoza v. Mango King Farmers Mkt. Corp.*, 14-CV-3314 (SJ) (RER), 2015 WL 5561033, at *4 (E.D.N.Y. Sept. 1, 2015) ("Plaintiffs' specific allegation that Defendants have an annual gross revenue in excess of $500,000.00, though somewhat conclusory, is sufficient to meet the pleading requirement under the FLSA." (citation omitted)), *adopted by*, 2015 WL 5561180 (E.D.N.Y. Sept. 21, 2015).

Fourth, Plaintiff's allegations are sufficient to conclude that Defendants operated in

7

interstate commerce. Plaintiff alleges that Defendants "conducted business with vendors and other business outside the State of New York" and "conducted business in interstate commerce involving the purchase of food and other essential equipment and supplies." Compl. ¶¶ 27–28. Furthermore, Plaintiff alleges that "Defendants as a regular part of its business, makes payment of taxes and other monies to agencies and entities outside the State of New York." Compl. ¶ 29. While these allegations are somewhat conclusory, it is reasonable to assume that a restaurant with over $500,000 in annual sales that is operating as part of a national chain does not rely exclusively on goods and equipment from New York State. *See Cabrera v. Canela*, 412 F. Supp. 3d 167, 173–74 (E.D.N.Y. 2019) (inferring that workers at restaurant handle materials that have traveled in interstate commerce based on more than $500,000 in annual sales); *see also Fermin v. Las Delicias Peruanas Restaurant, Inc.*, 93 F. Supp. 3d 19, 33 (E.D.N.Y. 2015) (inferring the same).

Accordingly, this Court finds that the allegations in the Mr. Khan's Complaint, admitted by entry of default, are sufficient for this Court to conclude that Defendant Chowdhury employed Mr. Khan jointly with Nyrene and that this employment falls under FLSA's protections.

B. The NYLL Applies to Plaintiff's Claims

As with the FLSA, the NYLL covers certain activities or practices affecting employers and employees. The NYLL defines an employer as a "person, corporation, limited liability company, or association employing any individual in any occupation, industry, trade, business or service." NYLL § 190(3). An employee is defined as "any person employed for hire by an employer in any employment." NYLL § 190(2). Because this definition is similar to the FLSA's definition, "courts use the same tests to determine joint employment under both the NYLL and the FLSA." *Ntalianas v. B & A Contracting of Landmark, Inc.*, No. 16-CV-5934 (ADS) (GRB), 2018 WL 1701960, at *3 (Feb. 26, 2018) (citation and brackets omitted), *adopted by*, 2018 WL 1582294 (E.D.N.Y. Mar. 31, 2018).

8

As stated above, this Court finds that Plaintiff is jointly employed by Mr. Chowdhury and Nyrene under the FLSA, and therefore this Court applies the same standards to find that Plaintiff is jointly employed by Mr. Chowdhury and Nyrene under the NYLL. *See Ansoumana v. Gristede's Operating Corp.*, 255 F. Supp. 2d 184, 188–89 (S.D.N.Y. 2003).

C.  *Plaintiff's Claims are Timely Under the FLSA and the NYLL*

Plaintiff filed suit in January 2018 to seek unpaid wages for a period of employment between June 2017 and November 2017. *See* Compl. ¶ 15. The NYLL has a six-year statute of limitations, see NYLL § 663(3), and the FLSA has a two-year statute of limitations, see 29 U.S.C. § 255(a), unless the plaintiff shows that the employer's actions were willful, in which case the limitations period extends to three years. *Id.* Plaintiff clears both statutes of limitations easily, as he brought suit less than a year after the alleged period of employment. *See* Compl. This Court concludes that Plaintiff's claims are timely under both the NYLL and the FLSA.

D.  *Liability and Damages*

By defaulting, a defendant admits the well-pleaded allegations relating to liability, but not those pertaining to damages. *See Cement & Concrete Workers Dist. Council Welfare Fund*, 699 F.3d at 234. As stated above, once liability is established as to a defaulting defendant, the plaintiff must still establish damages to a "reasonable certainty." *Credit Lyonnais*, 183 F.3d at 155. Under Rule 55, a court "may conduct hearings or make referrals . . . when, to enter or effectuate judgment, it needs to . . . determine the amount of damages [or] establish the truth of any allegation by evidence." Fed. R. Civ. P. 55(b)(2). A hearing is not required, however, as detailed affidavits and other documentary evidence can suffice. *Sun v. AAA Venture Capital, Inc.*, 2016 WL 5793198, at *3 (E.D.N.Y. Sept. 12, 2016) (citing *Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 508 (2d Cir. 1991)), *adopted as modified by*, 2016 WL 5868579 (E.D.N.Y. Oct. 6, 2016). In this case, the Complaint as well as the other documentary evidence suffices to establish Defendants' liability and the damages owed to Mr. Khan.

Mr. Khan seeks the following amounts upon a finding of liability: (1) $1,986.08 in unpaid minimum wages; (2) $1,986.08 in liquidated damages on the unpaid minimum wages; (3)

9

$441.26 in unpaid overtime wages; (4) $441.26 in liquidated damages on unpaid overtime wages; (5) $5,000 for failing to give required wage statements; and (5) an additional $3,350 in penalties for failing to give wage notices. *See* Mem. Supp. at 1–2, ECF No. 31-1.

### a. Underpaid Wages

An employer subject to the Fair Labor Standards Act and the New York Labor Law is required to pay its employees at least the minimum wage for every hour worked. *See* 29 U.S.C. § 206; NYLL § 652(1); N.Y. Comp. Codes R. & Regs. ("NYCRR") tit. 12, § 142-2.1(a). If a plaintiff is entitled to recover actual damages under both federal and state wage and hour laws, the plaintiff may recover under the statute providing the greater damages. *See Almanzar v. 1342 St. Nicholas Ave. Rest. Corp.*, No. 14-CV-7850 (VEC) (DF), 2016 WL 8650464, at *7 (Nov. 7, 2016), *adopted by*, 2017 WL 1194682 (S.D.N.Y. Mar. 30, 2017). "Accordingly, when calculating minimum-wage damages, the higher of either the FLSA or the New York minimum wage should be used for any period covered by both statutes." *Id.* (citing *Wicaksono v. XYZ 48 Corp.*, No. 10-CV-3635 (LAK) (JCF), 2011 WL 2022644, at *3 (May 2, 2011), *adopted by*, 2011 WL 2038973 (S.D.N.Y. May 24, 2011)).

Plaintiff calculates his unpaid wages based on the belief that he should have been paid $10.50 an hour. *See* Mem. Supp. at 14–15. During the time period in question, the applicable New York State Minimum Wage rate for a New York City employer with fewer than ten employees was $10.50 an hour. *See* 12 NYCRR § 146-1.2(a)(1)(i)(b); *see also* Compl. ¶ 14 (alleging that Defendants "employed six or more employees."). The federal minimum wage rate was $7.25 per hour. *See* 29 U.S.C. § 206(a)(1). This Court finds that Plaintiff should have been paid at a rate of $10.50 during the course of his employment by Defendants.

Plaintiff establishes that he worked 45 to 56 hours a week and was paid $9.00 an hour for all hours worked including those hours that exceeded 40 in a given week. Compl. ¶¶ 17, 18; Khan Decl. ¶ 16; *see* Khan Decl. at 4 (setting forth table with detailed information regarding

10

hours worked for the relevant time period).[1] Plaintiff attests that Defendants did not provide him with a written wage notice or pay stubs containing his work hours or rate of pay. Khan Decl. ¶¶ 19, 20. Instead, he attests that he was simply paid in cash. *Id.* Plaintiff attests that he "sent text messages to defendants with [his] weekly work hours[.]" Khan Decl. ¶ 18. He compiled a detailed table containing his weekly hours and spread of hours days, along with calculations relevant to this litigation. *See* Khan Decl. at 4. This evidence is sufficient in a default judgment action such as this one. *Cf. Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012) ("When a defendant defaults in an action brought under the FLSA, the plaintiff's recollection and estimates of hours worked are presumed to be correct." (citations omitted)).

Thus, the allegations suffice to conclude that Defendants violated the NYLL and FLSA by failing to pay the minimum wage rate of $10.50. Based on the allegations and the documentary evidence submitted in support of this motion, and after calculating the underpaid wages using the table set forth below, this Court finds that Plaintiff is entitled to an award for unpaid minimum wages in the amount of $1,986.08.

| Week | Weekly Hours | Wage Rate Paid | Wages Paid | Min. Wage | Wages Owed | Underpaid Wages |
|---|---|---|---|---|---|---|
| 7/9 | 41.6 | $9.00 | $374.40 | $10.50 | $436.80 | $62.40 |
| 7/16 | 48.9 | $9.00 | $440.10 | $10.50 | $513.45 | $73.35 |
| 7/23 | 47.5 | $9.00 | $427.50 | $10.50 | $498.75 | $71.25 |
| 7/30 | 49.3 | $9.00 | $443.70 | $10.50 | $517.65 | $73.95 |
| 8/6 | 50.5 | $9.00 | $454.50 | $10.50 | $530.25 | $75.75 |
| 8/13 | 51.25 | $9.00 | $461.25 | $10.50 | $538.13 | $76.88 |
| 8/20 | 22 | $9.00 | $198.00 | $10.50 | $231.00 | $33.00 |
| 8/27 | 33 | $9.00 | $297.00 | $10.50 | $346.50 | $49.50 |
| 9/3 | 47 | $9.00 | $423.00 | $10.50 | $493.50 | $70.50 |
| 9/10 | 56 | $9.00 | $504.00 | $10.50 | $588.00 | $84.00 |
| 9/17 | 33.5 | $9.00 | $301.50 | $10.50 | $351.75 | $50.25 |
| 9/24 | 8.5 | $9.00 | $76.50 | $10.50 | $89.25 | $12.75 |
| 10/1 | 35 | $9.00 | $315.00 | $10.50 | $367.50 | $52.50 |
| 10/8 | 35 | $9.00 | $315.00 | $10.50 | $367.50 | $52.50 |
| 10/15 | 44 | $9.00 | $396.00 | $10.50 | $462.00 | $66.00 |
| 10/22 | 44 | $9.00 | $0.00 | $10.50 | $462.00 | $462.00 |

---

[1] Plaintiff was not paid for the final four weeks of his employment. *See* Khan Decl. at 4.

|       |     |        |          |         |           |           |
|-------|-----|--------|----------|---------|-----------|-----------|
| 10/29 | 0   | $9.00  | $0.00    | $10.50  | $0.00     | $0.00     |
| 11/5  | 15  | $9.00  | $0.00    | $10.50  | $157.50   | $157.50   |
| 11/12 | 44  | $9.00  | $0.00    | $10.50  | $462.00   | $462.00   |
| Totals| 706.05 |     | $5,427.45 |        | $7,413.53 | $1,986.08 |

### b. Unpaid Overtime Wages

Under both the FLSA and the NYLL, an employee who works in excess of 40 hours in a single workweek is entitled to an overtime wage of at least one-and-a-half times the minimum wage rate for the hours worked in excess of 40 hours. *See* 29 U.S.C. § 207(a)(1); 29 C.F.R. § 778.110(a); 12 NYCRR § 146-1.4; *see also Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 200 (2d Cir. 2013).

In this case, Plaintiff has established that Defendants failed to pay him the requisite overtime wages. Plaintiff's allegations suffice to establish that he was paid $9.00 an hour for all hours worked, even those that exceeded 40 in a workweek. *See* Compl. ¶ 18; Khan Decl., Ex. 1. Defendants were required to pay Plaintiff at a rate of one-and-a-half times the minimum wage rate for all hours worked in excess of 40 in a workweek. After calculating the number of overtime hours worked and multiplying that number by the overtime rate (accounting for the above award, which compensates Plaintiff for the unpaid minimum wage), this Court finds that Plaintiff is entitled to an award of unpaid overtime wages in the amount of $441.26. The below chart sets forth the amounts that were used in calculating the award.

| Week | OT Hours Worked | OT Rate | OT Wages Owed |
|------|-----------------|---------|---------------|
| 7/9  | 1.6             | $5.25   | $8.40         |
| 7/16 | 8.9             | $5.25   | $46.73        |
| 7/23 | 7.5             | $5.25   | $39.38        |
| 7/30 | 9.3             | $5.25   | $48.83        |
| 8/6  | 10.5            | $5.25   | $55.13        |
| 8/13 | 11.3            | $5.25   | $59.06        |
| 8/20 | 0.0             | $5.25   | $0.00         |
| 8/27 | 0.0             | $5.25   | $0.00         |
| 9/3  | 7.0             | $5.25   | $36.75        |
| 9/10 | 16.0            | $5.25   | $84.00        |
| 9/17 | 0.0             | $5.25   | $0.00         |
| 9/24 | 0.0             | $5.25   | $0.00         |

|       |      |        |        |
|-------|------|--------|--------|
| 10/1  | 0.0  | $5.25  | $0.00  |
| 10/8  | 0.0  | $5.25  | $0.00  |
| 10/15 | 4.0  | $5.25  | $21.00 |
| 10/22 | 4.0  | $5.25  | $21.00 |
| 10/29 | 0.0  | $5.25  | $0.00  |
| 11/5  | 0.0  | $5.25  | $0.00  |
| 11/12 | 4.0  | $5.25  | $21.00 |
| Totals | 84.05 |       | $441.26 |

c. **Unpaid Spread-of-Hours**

Plaintiff also alleges that he was not compensated for "spread-of-hours" time as required by the NYLL. *See* Compl. ¶¶ 2, 3, 18. New York law requires that an employer pay its employees working more than 10 hours in a day an additional hour at the minimum statutory wage rate—this is called "spread-of-hours" pay. *See* 12 NYCRR § 142-2.4.

Plaintiff has shown that he is entitled to spread-of-hours pay. He alleges that Defendants failed to compensate him for 17 days in which he worked more than 10 hours in a day. *See* Khan Decl., Ex. 1. Based on this allegation, which is deemed true by operation of default, and using the statutory minimum wage rate of $10.50, this Court finds that Plaintiff is entitled to $178.50.

d. **Liquidated Damages**

Plaintiff requests liquidated damages under both the NYLL and FLSA for the time periods for which he was underpaid. *See* Compl. ¶¶ 1–3, 42, 48, 58.

Under the FLSA, a district court is generally required to award liquidated damages in the amount of actual damages for unpaid minimum wage and overtime compensation unless the employer can show that it acted in good faith and had reasonable grounds for believing that it was compliant with the FLSA. *See Barfield v. New York Cty. Health & Hosps. Corp.*, 537 F.3d 132, 150 (2d Cir. 2008) (citing 29 U.S.C. § 216(b)). The NYLL provides for liquidated damages in the amount of actual damages unless an employer "proves a good faith basis for believing that its underpayment of wages was in compliance with the law." NYLL § 198(1-a).

In this case, Plaintiff is entitled to liquidated damages under either standard, as Defendants have failed to show that they took "active steps to ascertain the dictates of the FLSA

13

and then acted to comply with them." *Lynch v. City of New York*, 291 F. Supp. 3d 537, 548 (S.D.N.Y. 2018); *see* Answer. This Court finds that Plaintiff is entitled to an additional award in an equal amount of the sum of the unpaid minimum and overtime wages ($2,427.34) and spread of hours pay ($178.50) for a total liquidated damages award of $2,605.84.

### e. Written Notice and Wage Statement Violations

Plaintiff alleges that he did not receive required wage notice or wage statements in violation of section 195 of the NYLL. *See* NYLL § 195(1) (setting forth requirement that employers provide written notice of rate of pay to employees at the time of hiring); NYLL § 195(3) (setting forth requirement that employers provide a statement of every payment of wages to employees). Plaintiff seeks $3,350 in penalties from Defendants for their failure to provide the requisite wage notice and $5,000 for their failure to provide the required wage statements. *See* Mem. Supp. at 7.

New York law provides that an employee who does not receive a wage notice, under § 195(1), "may recover . . . damages of fifty dollars for each work day that the violations occurred . . . , but not to exceed a total of five thousand dollars, together with costs and reasonable attorney's fees." NYLL § 197(1-b). An employee who does not receive a wage statement "shall recover . . . damages of two hundred fifty dollars for each work day that the violations occurred . . . , but not to exceed a total of five thousand dollars[.]" NYLL § 197(1-d).

Plaintiff's allegations are sufficient to conclude that Defendants are liable for failing to provide the requisite wage notices and wage statements under New York law for a period of 71 workdays. *See* Compl. ¶¶ 3, 23, 52; Khan Decl. ¶ 19; Mem. Supp. at 18. Plaintiff is entitled to recover $50 per workday because of Defendants' failure to provide him with the wage notices required by NYLL 195(1)—this violation amounts to a total penalty of $3,550.[2] Plaintiff is additionally entitled to recover $250 per workday because of Defendants' failure to provide him

---

[2] This Court's recommended award deviates from Plaintiff's request. Plaintiff requests a penalty of $3,350 for Defendants' failure to provide wage notices under NYLL 195(1) for a period of 71 workdays. It is clear that Plaintiff relied on the same data as the Court—namely, a $50 violation multiplied by 71 workdays—but merely erred in his calculations.

with the wage statements required by NYLL 195(3)—this violation amounts to a total penalty of $5,000.[3]

## IV. CONCLUSION

This Court respectfully recommends that Plaintiff's Motion for Default Judgment be GRANTED. The Court recommends finding Defendants liable under the FLSA and the NYLL and entering judgment against Defendants in the total amount of $13,761.69. That amount consists of $1,986.09 for unpaid minimum wages, $441.26 for unpaid overtime wages, $178.50 for spread-of-hours pay, $2,605.84 for liquidated damages, $3,550 for failing to provide a wage notice, and $5,000 for failing to provide wage statements.

Counsel for Mr. Khan is directed to serve a copy of this Report and Recommendation on Defendants at their respective last known addresses and file proof of service with the Court within five (5) business days of the date of this R&R.

## V. OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018); *McConnell v. ABC-Amega, Inc.*, 338 F. App'x 24, 26 (2d Cir. 2009); *Tavarez v. Berryhill*, No. 15-CV-5141 (CS) (LMS), 2019 WL 1965832, at *30 (S.D.N.Y. May 1, 2019); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

**SO ORDERED.**

---

[3] The maximum penalty for a wage statement violation is $5,000. *See* NYLL § 197(1-d).

/s/
Steven L. Tiscione
United States Magistrate Judge
Eastern District of New York

Dated: Brooklyn, New York
       March 11, 2020